UNITED STATES OF AMERICA,

        Plaintiff,

      v.                                Case No. 24-CR-216

DOUGLAS LARSON,

        Defendant.

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

On January 8, 2025, Defendant Douglas Larson, now 73 years old, pled guilty to willfully failing to collect/pay over tax in violation of 26 U.S.C. § 7202, and he was sentenced on April 4, 2025, to serve 24 months in the custody of the Bureau of Prisons (BOP), to be followed by three years of supervised release. Larson was also ordered to pay $1,102,845.13 in restitution. The case is before the court on Larson's January 30, 2026, "Motion to Modify Sentence Pursuant to title 18 U.S.C. § 3582(c)(1)(A) Based on Extraordinary and Compelling Reasons and Request for Evidentiary Hearing." Dkt. No. 31. The Government filed its reply on March 30, 2026, and on April 6, 2026, counsel for Larson requested additional time to submit supplemental information. Larson's supplemental information was filed June 1, 2026, and according to Larson's June 10, 2026, filing, the Government intends to file no response to Larson's supplemental information.

In 2018, as part of the First Step Act, Congress "created a judicial power to grant compassionate release on a prisoner's own request, provided that the prisoner first allowed the Bureau of Prisons to review the request and make a recommendation (or it let 30 days pass in silence)." *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). Larson reported to the

Federal Medical Center (FMC) Rochester on June 2, 2025, and requested compassionate release from the Warden at FMC Rochester on August 6, 2025, approximately two months after his arrival. The warden denied the request on August 27, 2025, indicating "you do not meet the criteria under 'Debilitated Medical Condition' at this time." Dkt. No. 31-4 at 1. The Government does not contest Larson's compliance with exhaustion. Dkt. No. 37 at 4. The court will, therefore, address Larson's motion for compassionate release.

The statute governing judicial authorization for a sentence reduction "provides that a court 'may not modify a term of imprisonment once it has been imposed except' if 'after considering the factors set forth in section 3553(a) to the extent that they are applicable,' it 'finds that extraordinary and compelling reasons warrant such a reduction.'" *United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). It is to this factor the court now turns.

Larson's motion states: "This relief is appropriate and necessary for the extraordinary and compelling reason that the Bureau of Prisons (BOP) has been unable or unwilling to provide the specialized medical care for Mr. Larson's ongoing and deteriorating serious medical condition of lymphedema with open wounds in his upper legs." Dkt. No. 31 at 1. "Without the required treatment for now almost eight months, severe swelling and open wounds are appearing on Mr. Larson's upper legs where such conditions were not present before his incarceration." *Id.* at 2.

There is no dispute that Larson has significant medical problems. The Presentence Investigation Report described his physical condition at that time as follows:

> Overall, the defendant described his physical health as "poor" and notes having a myriad of physical health concerns which requires regular follow up care. The defendant has diagnoses for Obesity, Type II Diabetes, Dyslipidemia, Sleep Apnea, Insomnia, Hyperlipidemia, Degenerative Joint Disease, Normocytic Anemia, Hypertension, Facet Arthropathy-Lumbar, Cellulitis of Lower Extremity-Bilateral, Lymphedema, Atrial Fibrillation (AFib), Chronic Systolic Heart Failure, History of

2

Severe Acute Respiratory Syndrome, and recurrent infections including skin ulcers. The defendant is also in need of a left knee replacement; however, doctors have not proceeded with addressing this condition due to Mr. Larson having complications with leg ulcers. Due to the increased risk of infection with open wounds, doctors have declined to proceed with the knee replacement surgery until the ulcers are deemed more stable.

The defendant is prescribed a host of medications to treat his medical conditions including Tizanidine, Carvedilol, Digoxin, Ferrous Sulfate, Lantus SoloStar, Semaglutide, Trazadone, Cephalexin, Apixaban, Topiramate, Bupropion, Buprenorphine-Naloxone, Lisinopril, Furosemide, Rosuvastatin, Metformin, Insulin, and Ozempic. Mr. Larson affirms being placed on the latter medication in July 2024 as a weight loss remedy and indicates he has lost between two to three pounds per week, and is around fifty pounds lighter since he eclipsed 405 pounds prior to beginning the medication regimen.

In addition, Mr. Larson uses a walker to help him move around, was previously administered cortisone shots and had prior rotator cuff surgery many years ago. The defendant also states being involved in a bad motorcycle accident in 2013 which has caused a slew of medical complications but did not divulge further specifics. The defendant also attends weekly appointments at a wound clinic in Appleton, Wisconsin and has a nurse report to his home on a daily basis to assist in changing out his dressings which cover his leg ulcers.

Dkt. No. 17, ¶¶ 83–85.

The court considered Larson's health needs at the time of sentencing but concluded that despite the severity of his condition, a prison sentence was warranted. Indeed, the court concluded that a strong argument could be made for a longer sentence than the two-year sentence the court imposed but that Larson's health problems convinced the court not to exceed the advisory guideline sentence range. In so ruling, the court noted that the BOP had an obligation to provide proper medical care to prisoners sentenced to its custody, that the BOP had medical facilities to provide such care, and that if it could not do so at one of its facilities, the BOP had the authority to place a defendant on home confinement. The court also noted the ability to reduce his sentence under the compassionate release provision of the law in the event Larson could show extraordinary

and compelling reasons to warrant such relief. It is with that background in mind that the court considers Larson's present request.

In support of his request, Larson has submitted letters by two health care providers who treated him before he was incarcerated. Dr. Dennis Laundrie of St. Elizabeth Wound Healing Center, in particular, described his treatment of Larson's lymphedema which was "caused by a chronic venous ulcer of his lower extremity." Dkt. No. 31-1. Dr. Laundrie described his treatment of Larson with lymphedema pumps, dressing changes, and compression wraps, and his prognosis:

> Patient does require lymphedema treatment on a daily basis including lymphedema pumps. Patient also needs dressing changes on at least an every other day basis based on the amount of drainage he has had.

> In terms of prognosis I am unsure if this patient's wounds will ever heal over as we have been seeing him on a regular basis. They have improved but have never completely closed. While not at the wound clinic the patient does have a primary attendant who does change his compression wraps as well as his dressings on an almost daily basis.

*Id.* Dr. Laundrie also expressed his concerns for the risk of infection Larson faced in prison without the kind of care he was receiving while at home:

> Given the patient has chronic open wounds he is at risk for infection. If his infection gets out of control this can be life-threatening. There is concern that the patient living in a communal living situation such as a prison if not a cleanly environment can increase his risk of infection. If a cellulitis were to occur and it is not caught in a timely fashion this can be both life and limb threatening. Limb threatening meaning the patient may risk an amputation.

*Id.*

A second letter from Aaron Moon, a Physician Assistant with the ThedaCare Infectious Disease department, confirms Dr. Laundrie's findings:

> This patient has been following in my clinic since October of 2022.
> He has recurrent diabetic and venous stasis ulcerations and lymphedema which have led to recurrent episodes of cellulitis to this day. He also had sepsis related to this requiring hospitalization in 2019. He has required venous surgical interventions and is also scheduled for further intervention with a vascular surgeon. Due to the nature

4

of his disease, he will require ongoing evaluations by Infectious Disease clinic, future courses of antibiotics, and daily wound cares. The overall prognosis for his leg wounds at this point is poor and he will remain high risk for recurrent cellulitis. His prognosis is improved so long as he can continue the above mentioned cares. If the cellulitis is not properly prevented and treated, the patient will be at risk for sepsis which can result in death. In order to reduce this risk, he must be kept in a sanitary environment where bacteria are not easily spread.

Dkt. No. 31-2.

Larson argues that the concerns expressed by his health care providers have been confirmed as his condition has deteriorated since his imprisonment. Whereas prior to his incarceration, he had no lymphedema or wounds in his upper legs, it began appearing in his upper thighs in August 2025. Larson contends that the BOP does not prescribe the use of lymphedema pumps for patients who are not bedridden and thus he has not had access to the treatment he received at home. As a result, he contends his condition has grown worse.

The Government contends that "[t]he BOP medical records do not support either premise, nor do they compel the conclusion that *only* immediate release to home confinement will prevent Larson from losing a limb or dying in prison." Dkt. No. 37 at 5. The Government notes Larson included medical records with his motion through December 19, 2025 (*id.* n.3), and the Government included medical records from December 23, 2025, through February 19, 2026, in further support of its response. On April 6, 2026, Larson requested an additional two weeks to supplement the record with additional medical information. On June 1, 2026, Larson submitted approximately 200 additional pages of medical records. The docket now includes over 1,200 pages of medical records, not organized by date or medical issue, which makes them difficult to parse through. The Government's response states:

> While Larson's frustration with his chronic condition is understandable, his pessimism is not, because he concedes that the BOP regimen of compression and elevation has helped with the lymphedema in his lower legs. There are additional reasons for optimism in the medical records, despite Larson's many challenges. He

does better with regular dressing changes. He tolerates prophylactic antibiotics well, which will minimize the risk of infection, and he is losing weight while in prison, which should at least make it easier to manage his lymphedema.

Larson's portrayal of lymphedema that is steadily worsening due to the absence lymphedema pumps is not borne out by the medical records. Larson's lymphedema and related issues have their ups and downs. *To some extent, however, the "downs" may be attributable to his own failure to comply consistently with instructions from his healthcare providers.* For example, he has not always changed his dressings as recommended, or showed up consistently at the nursing station to have them changed, and apparently did not take his insulin for much of the month of February. Exhibit A (pp. 9, 47, 95 of PDF file).

*Id.* at 5–6 (emphasis added).

As noted above, although the Government does not dispute that Larson has lymphedema, it asserts that Larson may have very well contributed to his own negative outcomes due to his non-compliance with medical advice, in that he did not report for scheduled blood sugar testing, failed to complete wound dressing changes, did not appear for scheduled appointments at the nursing station, and refused to take prescribed medications (specifically listing refusals for toe fungus medication and insulin). Defendant's reply indicates that Larson continued to experience worsening symptoms of lymphedema in February, resulting in macerated flesh and he was returned to the prison hospital and that "[i]f past is prologue, his legs will improve slightly with intensified attention by medical staff and, then, his symptoms will dramatically flare. Over and over." Dkt. No. 39 at 1.

While the Government's suggestion that the deterioration of Larson's physical condition may be due at least in part to his own behavior is not without some merit, the court is satisfied that Larson's present condition does constitute an extraordinary and compelling reason to modify his sentence. The risk of infection and resulting need for amputation or even a worse consequence for this 73-year-old man, despite the efforts of the BOP to meet his medical needs, warrants the relief

6

he seeks. Reducing his sentence to time served will allow him to receive the medical care he was receiving prior to his incarceration and hopefully avoid further risks to his health.

The court is also satisfied that a reduction to time served at this point in time is not inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). To be sure, Larson's crime was serious in its magnitude and effect. But it was a non-violent offence, and he has already served more than half of the two-year sentence imposed. Reducing his sentence will not affect the general deterrent effect of the original sentence, since the court is not suggesting that absent the serious medical needs of the defendant, his original sentence was not warranted. And given his age and physical condition, Larson poses no danger to public safety. Combined with continued supervision, these factors make it unlikely he could pose a financial risk in the future.

In sum, the court concludes that the requirements of § 3582(c)(1)(A) are met. Larson's motion for reduction of his sentence to time served is granted. Larson's term of supervised release shall commence upon his release from prison, and all other conditions of his sentence remain in full force and effect. This order is stayed for not more than one week if needed to allow Larson to make appropriate travel arrangements and to ensure his safe release. Within twenty-four hours of release, Larson will provide the probation office for the Eastern District of Wisconsin, Green Bay Division (920-884-7780) with his address and phone number.

**SO ORDERED** at Green Bay, Wisconsin this 1st day of July, 2026.

William C. Griesbach
United States District Judge

7